[Nos. 22266-0-I; 22267-8-I;   Division One.        December 11, 1989.]
22268-6-I; 22753-3-I;
22754-8-I.

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH PAUL DODD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MARC CHRISTOPHER SMITH, *Appellant*.

WINSOR, J., dissents by separate opinion.

---

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Sally F. Olsen, Deputy,* for respondent.

GROSSE, A.C.J.—These consolidated cases each raise the same issue relative to juvenile dispositions. Both appellants challenge the length of the sentences they received on multiple dispositions, each involving multiple counts.

At issue in this case is the continued viability of the opinion of this court in *State v. Brown,* 47 Wn. App. 729, 737 P.2d 288, *review denied,* 108 Wn.2d 1024 (1987), in light of subsequent action by the Juvenile Disposition Standards Commission (Commission) purporting to amend or interpret what is known as the 300 percent rule in such a manner as to negate, or at least mitigate, the impact of *Brown's* interpretation of the relevant statute.

The 300 percent rule derives from the language of RCW 13.40.180 which provides in part:

> Where a disposition is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations:
>
> . . . .

(2) The aggregate of all consecutive terms shall not exceed three hundred percent of the term imposed for the most serious offense; . . .

In *State v. Brown, supra,* the appellant contended, as do the appellants in the instant cases, that the statute restricts the court to a maximum sentence of 300 percent of the term imposed for the most serious offense for which he is sentenced at any disposition hearing regardless of the fact that the counts for which the sentence was being imposed may have arisen out of separate informations. At issue was whether the term "disposition" referred to by the statute was intended to refer to each information filed rather than to each disposition hearing. The *Brown* court stated as follows:

After reading the whole statute, it is clear that the term "disposition" is not ambiguous and that it refers to a disposition order and not a disposition hearing. We come to this conclusion primarily because the statute does not require the State or the court to consolidate into a single disposition hearing different informations pending against the same youth. It is undisputed, therefore, that separate disposition hearings could have been held to sentence Brown on each information. Thus, if we accepted Brown's argument and held that the 300 percent rule applied to a disposition hearing, the State would nevertheless be entitled to avoid the effect of our decision merely by the scheduling of disposition hearings. Because the statute as a whole indicates that Brown's construction of the term "disposition" leads to absurd results, we conclude that the term refers to a disposition order. *See State v. Burke,* 92 Wn.2d 474, 478, 598 P.2d 395 (1979); [*State v. Garrison,* 46 Wn. App. 52, 56, 728 P.2d 1102 (1986)].

*Brown,* at 733–34.

On July 1, 1987, the Commission published a document entitled "State of Washington Juvenile Disposition Sentencing Standards" which provides in pertinent part as follows:

The 300% rule is intended to limit the amount of sanction that an offender receives for multiple offenses which are disposed of during a court appearance. The 300% rule should apply across disposition orders. The statute holds the system accountable not to manipulate disposition orders or hearing dates to circumvent the intent of the 300% rule. (See RCW 13.40.180 for an explanation).

It is appellants' contention here that by virtue of the authority and function of the Commission its action in adopting these standards supersedes *Brown.*

Appellants and amicus[1] take the position that the standards adopted by the Commission in accordance with the appropriate statutory procedure have the same force and effect as agency rules, that the 300 percent rule is merely an action by the agency (Commission) interpreting applicable legislative authority, and is entitled to a presumption of validity. In short, the appellants and amicus contend that the juvenile sentencing standards at issue cannot be interpreted as overruling or superseding the decision of this court in *Brown,* but are in fact a change in the law through appropriate agency rulemaking. This argument is fundamentally flawed.

For purposes of this opinion we will assume, without deciding that the adoption of Juvenile Disposition Sentencing Standards is akin to agency rulemaking, that the sentencing standards in this case were adopted pursuant to appropriate statutory rulemaking authority. However, the flaw in the appellants' argument is that the decision of this court in *State v. Brown* was not a decision interpreting agency rules, nor one supplying an interpretation in the absence of a rule. Rather, this court engaged in statutory construction. It was the statute that was at issue in *Brown,* and it was the statute that was interpreted as set forth above. In these circumstances, the Commission is as restricted in its interpretation of a statute as is any other agency. It is a cardinal rule of administrative law that an agency by its rulemaking authority may not amend or nullify a statute under the guise of interpretation. *Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified in part,* 95 Wn.2d 962, 633 P.2d 1324 (1981); *see also Washington Fed'n of State Employees v. State Personnel Bd.,* 54 Wn. App. 305,

---

[1]The Juvenile Disposition Standards Commission, represented by the Attorney General's Office, has filed an amicus curiae brief.

308, 773 P.2d 421 (1989). This is so despite the rule that construction given to a statute by an agency charged with administering it is entitled to considerable weight in determining legislative intention behind the statute.

Although an agency interpretation of a statute. is entitled to deference, "the court is the final authority on statutory construction and it need not approve regulations or decisions inconsistent with a statute or the policy underlying the statute." *Moses v. Department of Social & Health Servs.*, 90 Wn.2d 271, 274, 581 P.2d 152 (1978); *see also Komm v. Department of Social & Health Servs.*, 23 Wn. App. 593, 600 n.5, 597 P.2d 1372 (1979). It is and always has been for the courts, not administrative agencies, to declare the law and interpret statutes. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978); *Othello Comm'ty Hosp. v. Department of Empl. Sec.*, 52 Wn. App. 592, 762 P.2d 1149 (1988), *review denied*, 112 Wn.2d 1018 (1989).[2]

We find *Brown* dispositive and affirm the sentences imposed in each of the consolidated cases.

WEBSTER, J., concurs.

WINSOR, J. (dissenting)—I agree with the majority that the issue in this case is whether the term "disposition", as referred to in RCW 13.40.180, applies to all of the charges

---

[2]We note the argument by respondent and amicus that RCW 13.40.030, in granting authority to the Commission to establish disposition standards subject only to express legislative disapproval, includes authority to interpret the provisions of RCW 13.40.180 because the 300 percent rule pertains to the length of confinement. We cannot agree. The legislative provisions with respect to disposition standards, and the Commission's authority thereunder, are contained in a different section of the statute than the 300 percent rule and pertain to a different subject. RCW 13.40.180 is a legislative limitation on the legislative requirement of consecutive sentences in the circumstance of multiple offenses. RCW 13.40.030 pertains to the authority of the Commission to establish a standard sentence or disposition for an offense. The authority granted by the statute to establish disposition standards does not include authority to amend or interpret a separate statutory provision pertaining to consecutive sentences. Thus, acceptance of the argument would have the effect of permitting the Commission to amend the statute.

for which sentences are imposed at a disposition hearing, or only to the counts contained in each disposition order. This issue is identical to that decided by another panel of this court in *State v. Brown,* 47 Wn. App. 729, 737 P.2d 288, *review denied,* 108 Wn.2d 1024 (1987), which the majority in this case relies upon to reach its holding. Because I believe that *Brown* was wrongly decided, I dissent.

As the *Brown* court discussed, if the language contained in a criminal statute is ambiguous, the rule of lenity requires the court to adopt the interpretation most favorable to the defendant. *Brown,* 47 Wn. App. at 733 (citing *State v. Martin,* 102 Wn.2d 300, 304, 684 P.2d 1290 (1984)). The language of RCW 13.40.180 is ambiguous, because although the term "disposition" could be interpreted to mean each disposition order, as it was by the *Brown* court, it could just as easily be interpreted to refer to all counts at one disposition hearing, as argued by the appellants in this case. Under the rule of lenity, the court should construe "disposition" to refer to disposition hearings.

The *Brown* court determined that the term "disposition" is not ambiguous by construing the statute as a whole:

> We come to this conclusion primarily because the statute does not require the State or the court to consolidate into a single disposition hearing different informations pending against the same youth. It is undisputed, therefore, that separate disposition hearings could have been held to sentence Brown on each information. Thus, if we accepted Brown's argument and held that the 300 percent rule applied to a disposition hearing, the *State* would nevertheless be entitled to avoid the effect of our decision merely by the *scheduling* of disposition hearings. Because the statute as a whole indicates that Brown's construction of the term "disposition" leads to absurd results, we conclude that the term refers to a disposition order.

(Italics mine.) *Brown,* 47 Wn. App. at 733–34. The fallacy of this interpretation of the statute is in the notion that the State (or any party) controls the "scheduling" of disposition hearings. The *court* controls the scheduling (and content) of disposition hearings. *See* JuCR 7.12(a), (b), and (d). Judges have the ultimate authority to decide how many accumulated dispositions against a juvenile will be handled

at any given disposition hearing. While separate disposition hearings theoretically could have been held to sentence Brown on each information, the court has the responsibility to control proceedings to avoid "absurd results". Further, judges presumably will want to have *all* of the pending dispositions involving the child presented at one hearing, not only to conserve time and expense, but more importantly in order to make the wisest and most fully informed decision regarding disposition. Unfortunately, the result of *Brown* is to instead afford the prosecutor the discretion to manipulate the 300 percent rule. The prosecutor can decide whether to accumulate a series of charges under one information or break them out into several informations. Although the Legislature has the right to delegate that choice to prosecutors, such an interpretation of the statute is by no means clear and seems unlikely. The Juvenile Disposition Standards Commission indicated as much when it apparently reacted to *Brown* on July 1, 1987, as set forth above by the majority. Majority, at 259.

Because I would not follow *Brown*, I would not reach the second issue discussed by the majority—whether the Commission's action effectively superseded *Brown.*

I would reverse and remand for disposition.

Review denied at 114 Wn.2d 1019 (1990).