[No. 43370-9-I.    Division One.    March 13, 2000.]

*In the Matter of the Personal Restraint of* MICHAEL E. PETERSON, *Petitioner.*

*Thomas Michael Kummerow* of *Washington Appellate Project*, for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Donna H. Mullen, Deputy,* for respondent.

APPELWICK, J. — In this personal restraint petition, Michael E. Peterson seeks relief from an Indeterminate Sentence Review Board's (Board) decision to rescind his final discharge. The Board had earlier "paroled" Peterson from his pre-Sentencing Reform Act of 1981 (SRA) sentences, so that he could begin serving time on sentences he received under the SRA. Three years later, the Board issued Peterson a final discharge pursuant to RCW 9.96.050, which requires the Board to discharge an offender who has served three years of parole. We hold that RCW 9.96.050 does not apply to this case because the Board did not actually parole Peterson when it transferred him from his pre-SRA sentences to his SRA sentences. Therefore, the Board's decision to rescind the discharge was not precluded by that statute. The petition is denied.

## FACTS

In 1983, Michael Peterson was convicted of armed robbery in two separate proceedings. He received a maximum term of 30 years on one cause, and 20 years on the other; the sentences were to run concurrently. The maximum term of Peterson's longest indeterminate sentence expires in 2013.

Peterson was paroled to the community in 1988. In 1989, he was again arrested for suspicion of armed robberies. His probation on the earlier convictions was revoked, and he was returned to custody. While in prison, Peterson was convicted and sentenced under the SRA for the 1989 armed robberies.

In 1992, the Indeterminate Sentence Review Board (Board) "paroled" Peterson from his pre-SRA sentences. The Board issued the "parole" because it wished to allow Peterson to begin serving his SRA sentences. Under Washington law, the term of a subsequent felony sentence can begin only after an inmate's actual imprisonment for an earlier felony ends. *In re Personal Restraint of Paschke*, 61 Wn. App. 591, 594, 811 P.2d 694 (1991); RCW 9.92-.080(1). The Board issued Peterson a document entitled "Order of Parole and Conditions."

In 1995, while Peterson was still in custody under his SRA sentences, the Board issued him a final discharge for the pre-SRA sentences, pursuant to RCW 9.96.050. That statute provides that "[i]f not earlier granted, the board shall make a final order of discharge three years from the date of parole unless the parolee is on suspended or revoked status at the expiration of the three years." RCW 9.96.050. The Board understood the statute to require a final discharge because Peterson had remained infraction-free for a period of three years. The Board believed that it was required to discharge Peterson from his pre-SRA sentences, even though he had served his "parole" for those sentences while still in prison on the SRA crimes. The Board issued Peterson a document entitled "Final Discharge Restoring Civil Rights."

In June 1998, while Peterson was still in prison serving his SRA sentences, the Board rescinded Peterson's final discharge for the pre-SRA sentences. The Board had reconsidered its obligations under RCW 9.96.050 and concluded that the legislative intent of the statute was to require a final discharge only upon satisfactory completion of three years parole *in the community*. The Board therefore decided that Peterson's final discharge had been in error, because he had served his parole while still in prison. The Board rescinded Peterson's final discharge and notified him that his conditions of parole still applied.

Peterson filed this personal restraint petition (PRP) contesting the Board's decision to rescind his parole. The

appropriateness of the Board's decision to transfer Peterson from his pre-SRA sentences to his SRA sentences is not at issue in this PRP.

## ANALYSIS

■ This court evaluates PRPs challenging parole decisions "by examining only the requirements of RAP 16.4." *In re Personal Restraint of Cashaw*, 123 Wn.2d 138, 149, 866 P.2d 8 (1994). The petitioner is entitled to relief if the Board did not have jurisdiction over him when it entered the decision, or if the Board's decision violates Washington law. RAP 16.4(c)(1), (2).

A. The Effect of RCW 9.96.050

Peterson argues that RCW 9.96.050, as well as one of the Board's own regulations, require the Board to discharge him from his pre-SRA sentences because he completed three years of parole. He contends that neither the statute nor the regulation supports the Board's conclusion that the parole must be served in the community. The Board responds that the statute and the regulation do not apply here, because Peterson was not actually paroled. We agree with the Board.

■ "Although an agency interpretation of a statute is entitled to deference, 'the court is the final authority on statutory construction and it need not approve regulations or decisions inconsistent with a statute or the policy underlying the statute.'" *State v. Dodd*, 56 Wn. App. 257, 261, 783 P.2d 106 (1989) (quoting *Moses v. Department of Soc. & Health Servs.*, 90 Wn.2d 271, 274, 581 P.2d 152 (1978)).

At the time the Board issued the final discharge, RCW 9.96.050 provided that an offender must be released after three years of parole:

> If not earlier granted, the board shall make a final order of discharge three years from the date of parole unless the parolee is on suspended or revoked status at the expiration of

the three years. Such discharge, regardless of when issued, shall have the effect of restoring all civil rights lost by operation of law upon conviction . . . .

The Board's own regulation established the same rule:

> When a paroled offender has adequately performed the obligations of his or her release for a period of three years from the date of parole, the board shall grant a final discharge restoring civil rights.

WAC 381-80-050.[1] Thus, neither the statute nor the regulation provides on its face that the offender must have served parole in the community in order to be entitled to a final discharge.

■■ Nonetheless, as the language quoted above makes clear, the statute and the regulation apply only to offenders who have been paroled. The term "parole" is defined by BLACK'S LAW DICTIONARY as: "[r]elease from jail, prison or other confinement after actually serving part of [a] sentence. Conditional release from imprisonment which entitles parolee to serve remainder of his term outside confines of an institution, if he satisfactorily complies with all terms and conditions provided in parole order." BLACK'S LAW DICTIONARY 1116 (6th ed. 1990) (citations omitted). Furthermore, under RCW 9.95.110, a paroled offender is one who is allowed to leave the confines of prison: "The board [of prison terms and paroles] may permit a convicted person to leave the buildings and enclosures of the penitentiary or the reformatory on parole, after such convicted person has served the period of confinement fixed for him by the board." Here, Peterson did not serve his "parole" outside the confines of prison.

---

[1]The Board revised this regulation in 1998, and it now reflects the Board's position in this case. The revised regulation requires the offender to have served three years of parole *in the community*:

> When a paroled offender has adequately performed the obligations of his or her release for a period of three years from the date of parole to the community, the board shall grant a final discharge restoring civil rights.

WAC 381-80-050.

RCW 9.95.100, which specifies the conditions under which the Board may release a prisoner on parole, further supports the Board's contention that it did not actually release Peterson on parole. That statute provides that the Board "shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release." RCW 9.95.100. Here, the Board's decision to "parole" Peterson was not based on the Board's opinion that Peterson had been rehabilitated.

The conclusion that Peterson was not actually paroled is further supported by our opinion in *In re Personal Restraint of Bible*, 69 Wn. App. 394, 845 P.2d 1336 (1992). There, we rejected the contention that transferring an offender from a pre-SRA to an SRA sentence constitutes "parole":

> Bible argues that the Board "paroled" him to his SRA sentence. The term is misleading in this context because what is at issue is not the Board's decision to parole him, but rather its decision effectively to cut short his minimum term on his pre-SRA sentence, permitting him to begin serving time on his [new] SRA term.

69 Wn. App. at 395 n.1.

Admittedly, the Board's own actions have complicated the issue. The Board concedes that it issued Peterson a document entitled "Order of Parole and Conditions." The Board also concedes that it has used the term "parole" to refer to the process of transferring an offender from a pre-SRA sentence to an SRA sentence. Nonetheless, because Peterson did not serve his "parole" outside the institution, and because the Board's decision to issue the "parole" was not based on its opinion that he had been rehabilitated, we conclude that Peterson was not actually paroled.

Because Peterson was not paroled, the Board was not required by RCW 9.96.050 to discharge him from his pre-SRA sentences three years after it had transferred him to his SRA sentences. Therefore, the Board retained jurisdiction over Peterson and was not precluded from rescinding

the final discharge. The Board's decision to rescind Peterson's discharge was not unlawful.

Because we hold that RCW 9.96.050 does not apply to this case, we do not address Peterson's argument that the Board loses jurisdiction over an offender after it issues a final discharge following three years of parole under that statute.

## B. Equitable Estoppel

Peterson next argues that, even if the Board did have jurisdiction and statutory authority to rescind his final discharge, the Board is nonetheless estopped from doing so. This argument is unpersuasive.

■ "Equitable estoppel is based on the principle that: 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" *Kramarevcky v. Department of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993) (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975)). The elements of equitable estoppel are: (1) an act or admission by the first party that is inconsistent with a later assertion; (2) an act by another party in reliance upon the first party's act or admission; and (3) an injury that would result to the relying party if the first party were not estopped from repudiating the original act or admission. *Id.* at 743.

■ The use of equitable estoppel against the government is not favored. *Id.* Consequently, a party asserting the doctrine against the government must demonstrate that equitable estoppel is necessary to prevent a manifest injustice, and that the exercise of government functions will not be impaired as a result of the estoppel. *Id.* The party asserting equitable estoppel must prove each element of estoppel with clear, cogent and convincing evidence. *Id.* at 744.

As the Board concedes, the first element of estoppel is

met here. But Peterson has not proven the second element of reliance. He has alleged no act taken in reliance upon the parole and final discharge. Further, applying equitable estoppel would impair the exercise of an important government function. One of the Board's functions is to supervise indeterminate offenders for a period of time following their release to the community. This function is directly related to community safety. If the Board were estopped from rescinding the final discharge, it would be unable to exercise this function. For these reasons, equitable estoppel does not apply to this case.

## C. Due Process

Peterson argues that the Board violated his right to due process by depriving him of a liberty interest when it rescinded his final discharge. He argues that RCW 9.96.050 and WAC 381-80-050 create a liberty interest, because they contain mandatory language requiring the Board to issue a final discharge after an offender has successfully served three years of parole. Because we hold that RCW 9.96.050 and WAC 381-80-050 do not apply to this case, we need not decide whether these two laws create a liberty interest.

## D. Equal Protection

Peterson raises an equal protection claim in his reply to the Board's initial response brief. An appellate court will not consider an issue raised for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). The Board has not responded to the equal protection argument. Therefore, we do not address this issue.

The petition is denied.

GROSSE and BECKER, JJ., concur.