IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT PETITION OF<br><br>CLIFTON BELL,<br><br>                        Petitioner. | No. 86523-4-I<br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — A Department of Corrections (DOC) hearing officer determined that Clifton Bell committed a serious infraction by introducing and transferring synthetic cannabis into a prison facility. The hearing officer sanctioned Bell with the loss of 75 days of good conduct time. Bell files this personal restraint petition (PRP), arguing the hearing officer erred by relying on a presumptive drug test and confidential information as evidence that he committed the infraction. Because Bell is no longer incarcerated, we dismiss his PRP as moot.

FACTS

In March 2022, Bell was an inmate at Airway Heights Corrections Center (AHCC). AHCC investigators received confidential information that Bell was working with someone outside of the prison to bring synthetic cannabis into the facility through the United States mail and then selling it. Investigators searched Bell's cell and found a piece of white paper taped to the insole of his shoe. Investigator Joshua Largent determined that "the suspicious white paper had the

appearance of Spice paper."[1]  DOC staff tested a sample of the paper using a presumptive "Synthetic Cannabinoids Test."  The sample showed a positive result for spice.

On April 11, 2022, investigators interviewed Bell, who admitted he smokes spice but denied bringing it into the prison.  On April 19, prison authorities issued Bell a serious infraction, alleging a violation of WAC 137-25-030(1)(a)(603) (WAC 603) "for introduction and transfer of Synthetic Cannabis/Spice into the AHCC secure Facility."[2]

On April 21, 2022, a DOC hearing officer held a disciplinary proceeding.  The officer admonished Bell of his rights and read him a summary of the infraction.  The hearing officer then reviewed the infraction report, statements from confidential sources, and the positive result of the synthetic cannabinoids test.  She determined the confidential information was reliable and credible because it was "first-hand," "internally consistent and . . . consistent with other known facts," and corroborated by other evidence.  The hearing officer concluded that Bell committed the infraction and imposed sanctions, including "75 days loss of good conduct time."

On April 26, 2022, Bell appealed the infraction to DOC Associate Superintendent Frank Rivera, arguing he did not transport or possess spice and

---

[1] "Spice" is a synthetic cannabinoid and a schedule I controlled substance.  *See* RCW 69.50.204(c)(30).

[2] On May 3, 2022, Bell received another serious infraction, alleging a violation of WAC 603 when DOC investigators drug tested a greeting card addressed to him.  The drug test returned a presumptive positive result for phenethylamines, a schedule I controlled substance.  But subsequent testing at the Washington State Patrol Crime Laboratory did not detect illegal substances.  This incident is not the subject of Bell's PRP.

requesting that an independent laboratory retest the evidence. He also argued the confidential information was unreliable. Rivera affirmed the hearing officer's decision because the record showed that Bell received notice of the disciplinary hearing, Bell had an opportunity to present evidence, and the hearing procedures satisfied due process. He noted that Bell was not entitled to have an outside laboratory retest the evidence. And he confirmed that the hearing officer properly "made an independent determination regarding reliability of the confidential source(s), credibility of the information, and safety concerns that justify non-disclosure of the confidential source(s)."

On August 29, 2023, Columbia Legal Services (CLS), on behalf of Bell and three other inmates, sent the DOC a letter saying that its use of presumptive drug tests as a basis for imposing discipline on incarcerated people violates their rights. It argued the tests are unreliable and demanded that the DOC stop "impos[ing] discipline based on a presumptive positive result." CLS said it intended to file a class action lawsuit.

On September 7, the DOC responded by changing its drug testing policy. It explained:

> Effective immediately, the Department has discontinued the use of presumptive drug test results as a sole basis for disciplinary action. DOC Policy 420.385 will be revised to allow an incarcerated individual the opportunity to request laboratory confirmation, if possible, for presumptive positive tests before an infraction hearing for drug possession.[3]

---

[3] When the DOC informed its staff of the new policy, it explained that presumptive drug test results are not the sole basis for an infraction when corroborating evidence like phone records, confidential informants, and witness statements also supports the infraction.

On September 22, 2023, Bell and other inmates brought a class action lawsuit against the DOC for its "practice of using unreliable, 'presumptive' drug tests on paper, mail, and belongings, as a basis for imposing prison discipline."[4]  On March 29, 2024, Bell filed this PRP.  On May 1, Bell completed his sentence and the DOC released him from incarceration.

ANALYSIS

Bell argues the hearing officer violated his due process rights by relying on a presumptive drug test result to determine he committed a violation of WAC 603, decreasing his good conduct time.  He also argues the hearing officer erred by improperly considering confidential information.  The DOC contends this case is moot and we should not reach its merits.  We agree with the DOC.

A case is moot when the court can no longer provide effective relief.  *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).  A petitioner may obtain relief through a PRP when he is under unlawful restraint.  RAP 16.4(a); *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 391, 20 P.3d 907 (2001).  Restraint is unlawful when the conditions or manner of the petitioner's restraint violate the United States Constitution or Washington's laws or constitution or when other grounds exist to challenge the legality of the restraint.  RAP 16.4(c)(6), (7).  Because the DOC has released Bell from prison, he is not unlawfully restrained, and his PRP is moot.

---

[4] Bell states that in August 2024, the Thurston County Superior Court dismissed the class action lawsuit.

Generally, we do not consider questions that are moot. *Hunley*, 175 Wn.2d at 907. But we may decide a moot case if it involves matters of continuing and substantial public interest. *Id.* To determine whether a case presents issues of continuing and substantial public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritarian determination that will guide public officers, and (3) the likelihood that the question will recur. *Id.* We also evaluate the quality of advocacy of the issues and the likelihood that the issue will evade review because the facts of the controversy are short-lived. *State v. Huckins*, 5 Wn. App. 2d 457, 463, 426 P.3d 797 (2018).

Bell agrees that his PRP is moot but argues that we should reach the merits of his arguments because he raises a question of "continuing and substantial public interest."[5] According to Bell, presumptive drugs tests are so unreliable that despite the DOC's new policy to consider the test results only with corroborating evidence, their use at disciplinary infraction hearings violates inmates' due process rights. And he asserts the issue is likely to recur.

But even if we agreed that we should address Bell's issue as one of continuing and substantial public interest, the record prevents us from doing so. Bell attached to his PRP only the United States Department of Justice's standards for drug testing kits and a Massachusetts superior court opinion

---

[5] Bell does not argue that the continuing and substantial public interest exception applies to the issue about whether the hearing officer erred by relying on confidential information.

addressing the Massachusetts Department of Correction's drug testing.[6]  That information is insufficient for us to meaningfully consider whether the Washington DOC's presumptive drug testing is inherently unreliable.  And while Bell attached to his reply brief information from his class action lawsuit, including an expert's declaration opining that the DOC's drug testing is unreliable, we decline to consider that evidence because the DOC had no opportunity to respond.  *See In re Pers. Restraint of Peterson*, 99 Wn. App. 673, 681, 995 P.2d 83 (2000) (declining to address issue raised in reply to which respondent had no opportunity to respond).

For these reasons, we decline to reach the merits of Bell's argument and dismiss his PRP as moot.

_____, ACJ

WE CONCUR:

_____          _____

---

[6] In a statement of additional authority, Bell also submitted a New York City Department of Investigation report on the reliability of the New York City Department of Correction's narcotics testing.